Ronald Alexander Hobby v. State of Maryland, No. 33, September Term, 2013

**CRIMINAL LAW – THEFT – PROPERTY – DECEPTION – SUFFICIENCY OF THE EVIDENCE** – Court of Appeals held that evidence was sufficient to support conviction for theft where defendant occupies or possesses home for period of time without payment to lawful owner and without authorization or consent of lawful owner, and where such occupation or possession is obtained through deception.  Court of Appeals held that consolidated theft statute does not require asportation of property or proof of actual deprivation.

**CRIMINAL LAW – THEFT – VALUE** – Court of Appeals held that where property that is subject of theft is occupancy of house, value is to be determined based on fair market rental value of house.

**CRIMINAL LAW – BURGLARY – DWELLING – BREAKING – SUFFICIENCY OF THE EVIDENCE** – Court of Appeals held that evidence was sufficient to support conviction for first-degree burglary where home vacant for period of months retained its character as a dwelling and where use of keys and garage door opener, obtained through illegitimate means, to gain access to home constituted breaking.

Circuit Court for Charles County
Case No. 08-K-10-001027

Argued: December 5, 2013

IN THE COURT OF APPEALS

OF MARYLAND

No. 33

September Term, 2013

_____

RONALD ALEXANDER HOBBY

v.

STATE OF MARYLAND

_____

Barbera, C.J.,
Harrell
Greene
Adkins
McDonald
Watts
McAuliffe, John (Retired,
Specially Assigned),

JJ.

_____

Opinion by Watts, J.

_____

Filed: January 24, 2014

Ronald Alexander Hobby ("Petitioner") was charged with, and convicted of, theft of property valued in excess of $100,000 and related offenses arising out of his unauthorized occupancy of a home for a period of approximately seven months. We must decide whether the evidence was sufficient to support the convictions for: (I) theft; (II) theft of property valued in excess of $100,000; and (III) first-degree burglary.

For the below reasons, we hold that: (I) the evidence was sufficient to support a conviction for theft; (II) the evidence was insufficient to support a conviction for theft of property valued in excess of $100,000, but was sufficient to support a conviction for theft of property having a value of at least $10,000, but less than $100,000; and (III) the evidence was sufficient to support a conviction for first-degree burglary.

## BACKGROUND

Petitioner was indicted in the Circuit Court for Charles County on five charges: theft of property valued in excess of $100,000, forgery, uttering a false document, identity fraud, and first-degree burglary.

From March 23 to March 24, 2011, the circuit court conducted a jury trial at which the following evidence was adduced. In 2007, Dr. Coryse Brathwaite had a single-family dwelling built at 2742 Kirk Drive ("the property") in Waldorf. Brathwaite had a mortgage on the home in the amount of approximately $900,000, and owed the builder an additional $500,000. Brathwaite's monthly mortgage payment was approximately $6,000, and her monthly payment to the builder was between $2,500 and $3,500. Brathwaite resided in the home from June 2007 until July 2009, at which point she moved out due to "financial difficult[ies]" and offered the property for sale with a realtor

from Coldwell Banker. At the time that Brathwaite moved out, the property was in "[e]xcellent condition" and "[e]verything was intact"; all of the doors and windows were closed and secured.

Brathwaite did not know Petitioner and did not authorize him to occupy the property. Brathwaite learned of an alleged lease between herself and Petitioner[1] after receiving a letter from the successful foreclosure bidder Severn Savings Bank FSB ("Severn Bank"), which alleged that she had been using the property to collect rent money that belonged to Severn Bank. Upon receiving the letter, Brathwaite telephoned Severn Bank to advise that she did not know of any lease involving the property. Brathwaite testified that the signature on the lease was not hers; that she never signed any lease involving the property; and that Petitioner did not have authority or permission to put her name on the lease. Brathwaite did not know an individual named "Derrick Williams"[2] and denied giving anyone named Derrick Williams permission to put her information on a lease.

Kimberly Washington, a real estate agent, identified Petitioner as a former client who had used her services to list his home in Fort Washington, Maryland, for sale in 2008. After expiration of the listing agreement, the Fort Washington home was eventually sold at foreclosure. Thereafter, Petitioner contacted Washington regarding

---

[1]On its face, the lease agreement purported to be a lease of 2742 Kirk Drive between Brathwaite and Petitioner.

[2]According to Petitioner's wife, an individual named Derrick Williams, who described himself as working for a property management company and representing the owner of 2742 Kirk Drive, arranged the lease of the property.

2742 Kirk Drive, which was for sale, and advised that he and his wife were interested in purchasing the property. Washington prepared a sales contract for Petitioner and his wife, offering $450,000 to purchase the home. Severn Bank rejected the offer. According to Washington, after informing Petitioner that the offer had been rejected, she had no contact with him about the property until she received a telephone call from a detective.

Andrea Colander, general counsel and vice president of Severn Bank, testified that on July 26, 2010, the property located at 2742 Kirk Drive was sold at foreclosure auction to Severn Bank. After the foreclosure sale, Colander began working on behalf of Severn Bank to take possession of the property, and was notified that the property was occupied by a tenant pursuant to a lease agreement. Colander obtained a copy of the purported lease. Believing the lease to be legitimate, Colander filed a motion for possession of the property with the circuit court and served Petitioner with a copy of the motion.

Colander noticed that the purported lease did not contain a provision designating a rental amount and that the lease term began after foreclosure proceedings had been initiated. Thus, Colander filed an "amended possessory order," notifying the circuit court of the above. Colander believed that Petitioner and Brathwaite "were in cahoots to try to pull a fast one on the bank." On August 4, 2010, Colander wrote letters to Petitioner and Brathwaite alleging fraud. On August 5, 2010, Brathwaite telephoned Colander, denied the existence of any lease, and told Colander that she did not know Petitioner. As a result, Colander notified the sheriff's office that she believed there was a "squatter" at

2742 Kirk Drive.  Colander filed an amended motion with the circuit court, stating that the purported lease for 2742 Kirk Drive was a "fraudulent lease[.]"

On September 29, 2010, Severn Bank obtained a writ of possession for the property, and Colander contacted the sheriff's office to execute the writ.  According to Colander, Severn Bank's re-sale of the property was "delayed by a number of months" as a result of issues arising out of Petitioner's tenancy; namely, Severn Bank was unable to take action or to show the property to potential purchasers until after Petitioner had been evicted and the property had been cleaned and repaired.  Approximately forty-five days before the start of Petitioner's trial, Severn Bank sold the property for $650,000.  According to Colander, Petitioner left the property in late September or early October 2010.

Nathaniel Swinton lived next door to 2742 Kirk Drive and met Petitioner in late February or early March 2010.  Swinton testified that Petitioner resided at 2742 Kirk Drive for approximately six months.

On August 26, 2010, the lead investigator in the case, Detective Elizabeth Clark of the Charles County Sheriff's Office, met with Petitioner at 2742 Kirk Drive.  During the meeting, Petitioner told Detective Clark that he was renting the property from Brathwaite.  Detective Clark asked Petitioner for copies of checks as proof of the rental arrangement.  Petitioner told Detective Clark that, although he did not have the paperwork in his possession at that time, he would provide her with the documentation at a later date.  Petitioner did not mention Derrick Williams during the meeting.

On September 15, 2010, during a telephone conversation, Detective Clark informed Petitioner that Brathwaite's signature on the purported lease was a forgery. Petitioner told Detective Clark that he was unaware of any forged signature and stated that he was renting the property from someone other than Brathwaite, and that he would contact her later with that information. Detective Clark received an affidavit signed by Brathwaite, and compared Brathwaite's signature on the affidavit to the signature on the purported lease. According to Detective Clark, the signatures appeared to have been made by different people.

Michelle Hobby ("Michelle"), Petitioner's wife, testified, on his behalf, that the adjustable rate mortgage on the home that she and Petitioner owned in Fort Washington adjusted and more than doubled their monthly mortgage payment, and that they ultimately lost the home in foreclosure. According to Michelle, she and Petitioner first met Derrick Williams, in 2008, when he brought potential purchasers to view their home, which they were attempting to sell. In December 2009, Williams contacted Michelle and Petitioner and informed them that "he had a property in Waldorf that was for rent" for $3,500 per month for one year. In January 2010, Michelle and Petitioner met Williams at 2742 Kirk Drive. According to Michelle, Williams entered a code at the front gate of the property and opened the front door of the home with a key. Two or three days after the viewing, Michelle contacted Williams to advise that she and Petitioner wanted to rent the home.

Michelle testified that on February 1, 2010, Williams visited her home in Fort Washington to deliver the purported lease for 2742 Kirk Drive, and she observed

Petitioner sign the lease with Brathwaite's signature already on the document at the time. Michelle testified that she and Petitioner paid $7,000 in cash to Williams upon signing the lease to cover the first month's rent and the security deposit. In March 2010, Michelle, Petitioner, and their family moved into the home at 2742 Kirk Drive. Michelle and Petitioner set up utilities and cable in their own names. Michelle testified that on April 1, 2010, Williams visited the property to collect a rent payment in the amount of $3,500, which Michelle and Petitioner paid in cash. In mid-April 2010, Michelle and Petitioner received a letter in the mail from Severn Bank indicating that the property at 2742 Kirk Drive was in foreclosure. Michelle testified that, as a result, she attempted to contact Williams several times by telephone, leaving messages to no avail, and near the end of April 2010, Williams's "[tele]phone was disconnected."

According to Michelle, at the end of April 2010, she and Petitioner telephoned Severn Bank and spoke with John Marhefka in the bank's foreclosure department. Michelle advised that she and her family were living in the home at 2742 Kirk Drive and had received the foreclosure notice. Marhefka told them that "there was nothing that he could do" because Severn Bank did not own the property. Michelle testified that she and Petitioner did not make any rent payments afterward because they were unable to get in contact with Williams or Brathwaite. According to Michelle, she telephoned Severn Bank once a month for a status update and was told by Marhefka that there was "nothing [Severn Bank] could do until [it] had possession of the property." On July 23, 2010, upon Marhefka's request, Michelle faxed a copy of the purported lease.

In September 2010, Michelle was notified that the purported lease was a forgery. Michelle testified that she and her family moved out of the property on or around October 1, 2010, which was the earliest possible opportunity after learning that the purported lease was a forgery. According to Michelle, the family used two sets of keys and a garage door opener supplied by Williams to enter the home, and Petitioner left the two sets of keys and garage door opener in the mailbox when the family moved out. Michelle testified that, during their occupancy of 2742 Kirk Drive, neither Severn Bank nor Brathwaite asked them to pay rent, and Severn Bank never requested permission to show the house. Michelle acknowledged that no rent was paid after April 1, 2010.

Marhefka, a senior vice president and chief risk officer for Severn Bank, did not recall speaking with Michelle. Marhefka recalled, however, a telephone conversation he had with Petitioner on March 19, 2010, when Petitioner told Marhefka that he was a tenant at 2472 Kirk Drive and wanted to purchase the home. On July 23, 2010, in response to Marhefka's request, Petitioner provided a copy of the purported lease.

At the close of the State's case, Petitioner moved for judgment of acquittal, contending that the theft charge had not been proven because the house "wasn't taken or moved or in any way hidden[,]" and arguing that there was no testimony as to any financial loss incurred by Severn Bank. As to first-degree burglary, Petitioner asserted that there was no intent to commit theft of any property and no breaking as he was given keys and a garage door opener to enter the house. The State responded that "asportation is not a requirement for theft" and that theft can be proven through the exertion of "unauthorized control over . . . property." The State argued that because Brathwaite

testified that the house was locked and secured when she left, Petitioner had gained access into the house with the intent to exert unauthorized control over the house. The circuit court denied the motion for judgment of acquittal.

After the court's ruling, before the presentation of additional evidence, Petitioner augmented the motion for judgment of acquittal arguing as to first-degree burglary that the house was not a dwelling because it was vacant and not intended to be used as an abode and place for persons to sleep. The circuit court reserved ruling on the issue.

At the close of all the evidence, Petitioner renewed the motion for judgment. As to theft, Petitioner argued:

> If you look at unauthorized control or control by deception . . . there has to be evidence of an intent to deprive the owner. Now, it's a situation in which they are in a lease situation. The Hobbys -- And the State has never offered any evidence indicating that [Petitioner] claiming this as his own, meaning this is, he's exerting his dominion and control to the exclusion of anyone else. There's no evidence that [] Brathwaite didn't want to get back in there, or that if she had that they wouldn't have left. There's plenty of evidence indicating that they didn't even control, either the bank didn't even own the property or have poss -- I guess there's still a possessory interest even if it's attenuated but, nonetheless, there's certainly no intent to deprive either [] Brathwaite or the bank of that property that they happen to reside in. Now, I think when you're looking at authorizing exertion and control cases, that deprivation, what is the deprivation? I don't believe the State's made that case at this point and it's not in the light most favorable to the State. I do believe there's some serious issues here as to whether they can say deprivation. As soon as they're told to leave, they leave.

The circuit court denied the motion. Thereafter, the circuit court instructed the jury, without objection, as to first-degree burglary and two theories of theft–(1) willfully and knowingly obtaining or exerting unauthorized control over property and (2) obtaining control over property by willfully or knowingly using deception.

- 8 -

The jury convicted Petitioner of theft of property valued in excess of $100,000, forgery, uttering a false document, identity fraud, and first-degree burglary. The circuit court sentenced Petitioner to five concurrent sentences of ten years' imprisonment, with all but fifty days suspended, a fine of $10,000, and five years' unsupervised probation.

Petitioner noted an appeal to the Court of Special Appeals. In an unreported opinion, by majority, a panel of the intermediate appellate court affirmed all judgments of conviction, concluding that the evidence was sufficient to sustain convictions for theft over $100,000 and first-degree burglary. The Honorable Christopher B. Kehoe dissented as to the sufficiency of the evidence for the conviction of theft of property in excess of $100,000. Judge Kehoe agreed that Petitioner was guilty of theft, but disagreed that the State had presented sufficient evidence to support a finding that the fair market rental value of the property during the period of Petitioner's occupancy was in excess of $100,000. Both the majority and Judge Kehoe agreed that Petitioner had abandoned the claim that the "exert control" element of theft was not met by failing to raise the argument on appeal.

Petitioner filed in this Court a Petition for Writ of Certiorari, which was granted on April 22, 2013. See Hobby v. State, 431 Md. 219, 64 A.3d 496 (2013).

## STANDARD OF REVIEW

In Derr v. State, 434 Md. 88, 129, 73 A.3d 254, 278-79 (2013), we recently reiterated the standard of review governing appellate review of the sufficiency of evidence to sustain a conviction, stating:

When determining whether the State has presented sufficient evidence to sustain a conviction, we have adopted the Supreme Court's standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979) (emphasis in original) (citation omitted), namely, "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Yates v. State*, 429 Md. 112, 125, 55 A.3d 25, 33 (2012), *Titus v. State*, 423 Md. 548, 557, 32 A.3d 44, 49-50 (2011). In applying this standard we have stated:

> The purpose is not to undertake a review of the record that would amount to, in essence, a retrial of the case. Rather, because the finder of fact has the unique opportunity to view the evidence and to observe first-hand the demeanor and to assess the credibility of witnesses during their live testimony, we do not re-weigh the credibility of witnesses or attempt to resolve any conflicts in the evidence. We recognize that the finder of fact has the ability to choose among differing inferences that might possibly be made from a factual situation, and we therefore defer to any possible reasonable inferences the trier of fact could have drawn from the admitted evidence and need not decide whether the trier of fact could have drawn other inferences from the evidence, refused to draw inferences, or whether we would have drawn different inferences from the evidence.

*Titus*, 423 Md. at 557-58, 32 A.3d at 50 (quotations and citations omitted).

## DISCUSSION

### I.

Petitioner contends that the evidence is insufficient to support a conviction for theft "in any amount." Petitioner argues that a theft of a house did not occur, as the house was not asported to another location, and thus, the evidence is insufficient "to prove the mode of theft specifically set forth in the indictment." Alternatively, Petitioner contends that the State failed to prove that he deprived Brathwaite and Severn Bank of the property

- 10 -

through deception because there was no prospective purchaser or lessee "displaced" as a result of his occupancy; *i.e.*, there was no deprivation and thus no theft. Petitioner also asserts that the State failed to prove that he exerted unauthorized control over the property, as his action in occupying the home as a "squatter" did not constitute theft under the theory of "exerting unauthorized control."

The State responds that Petitioner's argument regarding the "exert control" element of theft is not properly before the Court. The State contends that Petitioner failed to raise the argument at three critical points: (1) in his motion for judgment of acquittal; (2) in his brief in the Court of Special Appeals, resulting in the intermediate appellate court determining that such an argument had been abandoned; and (3) in his Petition for Writ of Certiorari, in which he failed to challenge the intermediate appellate court's abandonment holding.

The State contends that the evidence is sufficient to support Petitioner's conviction for theft under the theory of obtaining control by deception because the evidence demonstrated that Petitioner, through deception, "brought about a transfer of possession of the property." The State argues that actual deprivation of the property is not required, as the statute requires proof only that the defendant "intend[ed] to deprive the owner of the property." The State asserts that, even if actual deprivation is required, the jury could reasonably have concluded that, because Petitioner resided in the house, he deprived the owner of the opportunity to live there or to receive rental income from a lawful tenant.

Maryland Rule 4-324(a), concerning motions for judgment of acquittal, provides, in pertinent part: "The defendant shall state with particularity all reasons why the motion

should be granted." "Under [Maryland] Rule 4-324(a), a defendant is . . . required to argue precisely the ways in which the evidence should be found wanting and the particular elements of the crime as to which the evidence is deficient." Montgomery v. State, 206 Md. App. 357, 385, 47 A.3d 1140, 1157, cert. denied, 429 Md. 83, 54 A.3d 761 (2012) (alteration and omission in original) (internal quotation marks omitted) (quoting Fraidin v. State, 85 Md. App. 231, 244-45, 583 A.2d 1065, 1072, cert. denied, 322 Md. 614, 589 A.2d 57 (1991)). And, "[t]he language of the rule is mandatory." State v. Lyles, 308 Md. 129, 135, 517 A.2d 761, 764 (1986).

If a trial court denies a motion for judgment of acquittal made at the close of the evidence offered by the State, a defendant "may offer evidence . . . without having reserved the right to do so and to the same extent as if the motion had not been made. In so doing, the defendant withdraws the motion." Md. R. 4-324(c). In other words, a defendant is required to renew a motion for judgment of acquittal at the close of all the evidence or to argue anew why the evidence is insufficient to support a particular conviction. See generally Warfield v. State, 315 Md. 474, 487-88, 554 A.2d 1238, 1245 (1989) ("When a party makes anew a motion for judgment at the conclusion of all the evidence and states that the motion is based upon the same reasons given at the time of the original motion was made, or when a party 'renews' a motion for judgment and thereby implicitly incorporates by reference the reasons previously given, the reasons supporting the motion are before the trial judge.").

On appeal from a jury trial,

> appellate review of sufficiency of evidence is available only when the defendant moves for judgment of acquittal at the close of all the evidence and argues precisely the ways in which the evidence is lacking. The issue of sufficiency of the evidence is not preserved when [the defendant]'s motion for judgment of acquittal is on a ground different than that set forth on appeal.

Anthony v. State, 117 Md. App. 119, 126, 699 A.2d 505, 508, cert. denied, 348 Md. 205, 703 A.2d 147 (1997) (citations omitted). Thus, "[a] defendant may not argue in the trial court that the evidence was insufficient for one reason, then urge a different reason for the insufficiency on appeal in challenging the denial of a motion for judgment of acquittal." Tetso v. State, 205 Md. App. 334, 384, 45 A.3d 788, 817, cert. denied, 428 Md. 545, 52 A.3d 979 (2012) (citation omitted).

Before this Court, where a prior appellate decision exists, Maryland Rule 8-131(b)(1) governs:

> Unless otherwise provided by the order granting the writ of certiorari, in reviewing a decision rendered by the Court of Special Appeals . . ., the Court of Appeals ordinarily will consider only an issue that has been raised in the petition for certiorari or any cross-petition and that has been preserved for review by the Court of Appeals. Whenever an issue raised in a petition for certiorari or a cross-petition involves, either expressly or implicitly, the assertion that the trial court committed error, the Court of Appeals may consider whether the error was harmless or non-prejudicial even though the matter of harm or prejudice was not raised in the petition or in a cross-petition.

Here, as to theft of the house pursuant to Criminal Law Article (2002, 2012 Repl. Vol.) ("C.L.") § 7-104(a) of the Maryland Code (under the "exerting unauthorized control" theory), we conclude that Petitioner failed to preserve an issue as to whether the State proved the element of exerting unauthorized control. On brief, Petitioner contended for the first time that the State failed to prove that he exerted unauthorized control over

the property because "whatever crime a 'squatter' might commit, it is not theft under a theory of exerting unauthorized control[,]" and the General Assembly did not intend to criminalize a squatter's conduct as theft. A review of the motion for judgment of acquittal Petitioner made in the circuit court reveals that he did not raise the argument he now raises before this Court. Before the trial court, Petitioner contended that there was no evidence demonstrating that he exercised unauthorized control "to the exclusion of anyone else[,]" in that there was no evidence that Brathwaite wanted to move back into the home, or that if Brathwaite had wanted to move back in, that Petitioner would not have left. Petitioner's point as to control was that the State was required to prove actual deprivation under the theft statute. In moving for judgment of acquittal, however, Petitioner failed to argue with specificity that the exerting unauthorized control type of theft is not applicable to the actions of a "squatter," or that the General Assembly intended the acts of a squatter to not constitute theft under the consolidated theft statute. See Md. R. 4-324(a) ("The defendant shall state with particularity all reasons why the motion [for judgment of acquittal] should be granted."). The argument now raised by Petitioner is not preserved for this Court. See Tetso, 205 Md. App. at 384, 45 A.3d at 817 ("[A] defendant may not argue in the trial court that the evidence was insufficient for one reason, then urge a different reason for the insufficiency on appeal[.]" (Citation omitted)); Anthony, 117 Md. App. at 126, 699 A.2d at 508 ("The issue of sufficiency of the evidence is not preserved when [the defendant]'s motion for judgment of acquittal is on a ground different than that set forth on appeal." (Citations omitted)).

Not only did Petitioner fail to preserve the lack of exerting unauthorized control argument in the trial court, but Petitioner also failed to raise the argument in the Court of Special Appeals. In its unreported opinion, the intermediate appellate court specifically observed:

> The State notes that [Petitioner] did not argue that he did not "exert control" over the house by living in it for several months because it was "land." Although [Petitioner] raised this argument in his motion for judgment of acquittal, which was denied by the trial court, we agree that Hobby has, consequently, "abandoned any such claim" by not raising a "control" or "land" argument on appeal.

Indeed, in dissent, Judge Kehoe agreed that "[t]he Majority had no choice but to accept the State's reasoning because the issue was not raised on appeal." "[A] question not presented or argued in an appellant's brief is waived or abandoned and is, therefore, not properly preserved for review." State v. Jones, 138 Md. App. 178, 230, 771 A.2d 407, 438 (2001), aff'd, 379 Md. 704, 843 A.2d 778 (2004) (alteration in original) (citation and internal quotation marks omitted).

Compounding the problem, Petitioner failed to raise his lack of exerting unauthorized control argument in the Petition for Writ of Certiorari filed with this Court or to challenge the Court of Special Appeals's determination that he abandoned the argument. Pursuant to Maryland Rule 8-131(b)(1), our review is confined ordinarily to only those issues that have "been raised in the petition for certiorari or any cross-petition[.]" We have not hesitated to disregard issues raised in a petitioner's brief that were not properly included in the petition for *certiorari*. See Yates v. State, 429 Md.

112, 130 n.6, 55 A.3d 25, 36 n.6 (2012); Huger v. State, 285 Md. 347, 354, 402 A.2d 880, 885 (1979). As such, we decline to address the contention.

As to the merits of the preserved arguments, C.L. § 7-104 of the Maryland Code prohibits theft committed in several ways, including the following two:

(a) *Unauthorized control over property.* – A person may not willfully or knowingly obtain or exert unauthorized control over property, if the person:

(1) intends to deprive the owner of the property;

(2) willfully or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or

(3) uses, conceals, or abandons the property knowing the use, concealment, or abandonment probably will deprive the owner of the property.

(b) *Unauthorized control over property – By deception.* – A person may not obtain control over property by willfully or knowingly using deception, if the person:

(1) intends to deprive the owner of the property;

(2) willfully or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or

(3) uses, conceals, or abandons the property knowing the use, concealment, or abandonment probably will deprive the owner of the property.

"Obtain" is defined, in relevant part, in C.L. § 7-101(g) as "(1) in relation to property, to bring about a transfer of interest in or possession of the property[.]" "Property," as used in the theft statute, "means anything of value[,]" C.L. § 7-101(i)(1), and includes "real estate" as well as "a thing growing on or affixed to, or found on land,

or part of or affixed to any building[.]" C.L. § 7-101(2)(i) and (2)(vi). <u>Contra</u> <u>Sheffield v. State</u>, 708 So.2d 899, 900, 902, 906, 910 (Ala. Crim. App. 1997), <u>cert. denied</u>, 708 So.2d 911 (Ala. 1997) (The Court of Criminal Appeals of Alabama held that a person could not steal real property, specifically an "interest in land," because Alabama's theft statute failed to explicitly include "real property" within the definition of "property"; the Court further observed: "[I]n most states, the evolution of [the types of property that can be the subject of theft and theft-related offenses] has produced a broader definition of 'property' than it has in Alabama–a definition that, in most instances, explicitly and specifically includes real property.").

In Maryland, the common law crime of larceny was traditionally defined as "the intentional taking, without legal warrant, of the **personal property** of another with the unlawful intention to deprive the owner of such property." <u>Murray v. State</u>, 214 Md. 383, 386, 135 A.2d 314, 315 (1957) (citation and internal quotation marks omitted) (emphasis added). "[M]odern [theft] statutes[, however,] have generally covered other kinds of property as well." Wayne R. LaFave, <u>Substantive Criminal Law</u> § 19.4 (2d ed.) (updated Oct. 2013). In Maryland, "[b]y chapter 849 of the Acts of 1978, . . . the General Assembly . . ., effective July 1, 1979, consolidated a number of theft-related offenses . . . into a single newly created statutory offense known as theft." <u>Jones v. State</u>, 303 Md. 323, 326, 493 A.2d 1062, 1063 (1985).[3] By Chapter 849 of the Acts of 1978, the General

---

[3]The consolidated theft statute "combin[ed] what were previously seven separate larceny offenses into the one crime of theft[,]" including "larceny, larceny by trick, larceny after trust, embezzlement, false pretenses, shoplifting, and receiving stolen (Continued...)

Assembly expanded the common law definition of "property" to include, among other things, "real estate" and "things growing on or affixed to, or found on land, or part of or affixed to any building[.]" 1978 Md. Laws 2466. That definition remains in force today.

The theft statute distinguishes between "personal property" and "property," as seen in C.L. § 7-104(c), which, in contrast to C.L. § 7-104(a) and (b), narrowly prohibits possessing stolen personal property; specifically, pursuant to C.L. § 7-104(c), "[a] person may not possess stolen **personal** property knowing that it has been stolen, or believing that it probably has been stolen[.]" (Emphasis added). The modern consolidated theft statute does not distinguish, however, between "movable" and "immovable" property, as does the Model Penal Code. See Model Penal Code § 223.2. In addition, the modern consolidated theft statute does not require asportation[4] of property. See Charles E. Moylan, Jr., Maryland's Consolidated Theft Law and Unauthorized Use § 4.2, 24 (2001) ("Significantly missing from the current definition of theft's proscribed acquisition, however, are common law larceny's requirements of a trespassory taking (the caption) and a carrying away (asportation).").

In People v. Perry, 864 N.E.2d 196, 201 (Ill. 2007), the Supreme Court of Illinois "determine[d] whether [a] defendant was properly convicted of theft of property valued in excess of $10,000 when the property at issue was the occupancy of a hotel room for a period of more than three months." The Court observed that, although under the common

property." State v. Weems, 429 Md. 329, 338, 338 n.5, 55 A.3d 921, 926, 926 n.5 (2012) (citations omitted).

[4]"Asportation" is "[t]he act of carrying away or removing (property or a person)." Black's Law Dictionary 122 (8th ed. 2004).

law occupancy of a hotel room could not have been larceny, under the modern Illinois theft statute, "some items that would not have been subject to the crime of larceny at common law were nevertheless property subject to statutory theft." Id. at 204-05.[5] The Court noted that, although "[r]eal estate cannot be taken and carried away," it is "property" under the Illinois theft statute. Id. at 206. The Court characterized the property at issue in the case as occupancy of the hotel room (as opposed to the room itself), and held that "use of a hotel room is a thing of value" and, thus, "property" within the meaning of the Illinois theft statute. Id. at 209. The Court's characterization of the property was further explained as follows:

> The property at issue here is the use of a hotel room. The hotel's complement of rooms can be analogized to a store's inventory of goods. The hotel has a finite number of rooms, which it can rent to members of the public 365 nights each year. One night in one room is a thing of value. When this thing of value is taken by deception, the owner has permanently lost the benefit of one night's income. We, therefore, hold that each night of occupancy that is obtained by deception permanently deprives the owner of the beneficial use of the hotel room within the meaning of [the Illinois theft statute].

Id. at 211. Accordingly, the Court held that "the taking of such property [occupancy of a hotel room] by deception can result in the owner[] being permanently deprived of its use or benefit" sufficient to support a conviction under the Illinois theft statute. Id. at 222. The Court held that the value of the hotel suite, which the defendant occupied with his family for several months without payment, exceeded $10,000, based on a rental rate of

---

[5]Like Maryland's theft statute, Illinois's theft statute defines property as "anything of value" including "real estate" and "things growing on, affixed to, or found o[n] land, or part of or affixed to any building[.]" Perry, 864 N.E.2d at 202 (citation omitted).

at least $130 per night.  Id. at 211.  The Court rejected the defendant's claim that the prosecution did not show "a permanent loss of possession by the owner."  Id.

C.L. § 7-101(c) defines "deprive" as used in Maryland's theft statute, as follows:

"Deprive" means to withhold property of another:

(1) permanently;

(2) for a period that results in the appropriation of a part of the property's value;

(3) with the purpose to restore it only on payment of a reward or other compensation; or

(4) to dispose of the property or use or deal with the property in a manner that makes it unlikely that the owner will recover it.

The Court of Special Appeals has observed that, "[u]nder the plain language of the [theft] statute, actual deprivation to the owner is merely one circumstance from which the jury may infer that the offender committed the prohibited act with the requisite criminal intent."  Lane v. State, 60 Md. App. 412, 423, 483 A.2d 369, 375 (1984), cert. denied, 302 Md. 570, 489 A.2d 1129 (1985).  In other words, proof of actual deprivation is not required under the statute; rather, proof of the defendant's **intent** to deprive is required.  See C.L. § 7-104(a)(1) and (b)(1).

In the instant matter, we examine first whether the "property" at issue may be the subject of theft under C.L. § 7-104(b).  Under the consolidated theft statute, a house most certainly may be the subject of a theft as it is a thing "of value."  C.L. § 7-101(i)(1).  More specifically, a house is also "real estate" and "a thing . . . affixed to, or found on

- 20 -

land[.]" C.L. § 7-101(i)(2)(i) and (2)(vi).[6] From our perspective, theft of a house could conceivably be accomplished in any number of ways. For example, a home could be detached from its foundation and physically removed from its original location. Or, a thief could effect a transfer of fee simple title of the home, or the transfer of some other interest in the home.[7] Or, as in this case, theft of a house could occur where a thief temporarily occupies or possesses the home without authorization or payment to the lawful owner. On this point, Perry, 864 N.E.2d 196, is instructive. In Perry, the Supreme Court of Illinois determined occupancy, or use, of a hotel room, to be theft of "property" for purposes of Illinois's theft statute, as the hotel room was a thing of value that earned income for the owner, and when taken by deception, "the owner . . . permanently lost the benefit of one night's income." Id. at 211.

Here, Petitioner was alleged to have occupied or possessed 2742 Kirk Drive without payment or authorization for a period of approximately seven months. Simply put, finding the holding of the Supreme Court of Illinois in Perry, id., instructive, we are satisfied that theft of a house may occur through occupancy or possession of the house without payment for it or its use to the lawful owner and without authorization or consent of the lawful owner–i.e., the occupancy or possession of the house is a thing of value that can be the subject of theft.

---

[6]This is, of course, in contrast to common law larceny, which was limited to theft of tangible personal property that could be carried away by the thief.

[7]The State notes that "at no time" has it "claim[ed] that [Petitioner] stole fee simple title" to the home.

We reject Petitioner's argument that theft of the house did not occur as the house remains at its original location and was not asported to another location. Petitioner confuses the common law crime of larceny with theft under the modern consolidated theft statute. Asportation, or the carrying away or removal of property, is not required under the modern consolidated theft statute. See C.L. § 7-104; Moylan, *supra*, at 24. Stated otherwise, the State is not required to demonstrate that Petitioner carried away the house from its original location to prove that Petitioner committed theft of the house. And, the indictment did not aver that Petitioner carried away the home.

As to theft of the house pursuant to C.L. § 7-104(b)–theft by deception–viewing the evidence in the light most favorable to the State (as we must), we are convinced that the evidence is sufficient to support the conclusion that Petitioner committed theft by obtaining control and possession of the property through deception, and, specifically, that Petitioner brought about the physical transfer of possession of the house located at 2742 Kirk Drive through deception. There was ample evidence from which the jury could reasonably have concluded that Petitioner resided in, or possessed, the home for approximately seven months, without the consent or knowledge of Brathwaite, the lawful owner, and that he forged the lease with the intent to remain in the home rent-free. The jury was entitled to discredit, in its entirety, Michelle's testimony that an individual named Derrick Williams arranged for lease of the property, and to conclude instead that the purported lease was a bogus creation by Petitioner meant to fraudulently arrange his possession and occupancy of the property. Or, the jury may have believed Michelle's testimony that an individual named "Derrick Williams" existed, but concluded instead

that Petitioner and Williams schemed together to enable Petitioner to reside in the property rent-free.[8] Without a doubt, testimony concerning the existence and forging of a lease agreement, purporting to be a lawful lease of the property from Brathwaite to Petitioner, was sufficient to support a finding that Petitioner intended to deprive Brathwaite and Severn Bank of the property, and was sufficient to establish theft through deception.

We find no merit in Petitioner's contention that the State was required to prove actual deprivation to support a conviction pursuant to C.L. § 7-104(b). By its plain language, C.L. § 7-104(b) does not require proof of actual deprivation. A person may commit theft by "willfully or knowingly using deception, if the person[] **intends to deprive** the owner of the property[.]" C.L. § 7-104(b)(1) (emphasis added). Although "actual deprivation to the owner is . . . one circumstance from which the jury may infer that the offender committed the prohibited act with the requisite criminal intent[,]" Lane, 60 Md. App. at 423, 483 A.2d at 375, the statute does not require that exact proof.

Petitioner's reliance on Fraidin, 85 Md. App. 231, 583 A.2d 1065, for the proposition that actual deprivation is required for conviction under the theft statute is not persuasive. In Fraidin, id. at 245, 583 A.2d at 1072, the Court of Special Appeals focused "in assessing legal sufficiency [for theft], [on] only two sub-issues: 1) proof of deception and 2) proof of obtaining control." The Court of Special Appeals did not find proof of deprivation to be a required element of theft under either theory. Indeed, this

_____

[8]We note also that the jury convicted Petitioner of forgery and identity fraud, two other crimes involving deception and dishonesty.

Court later observed that, in <u>Fraidin</u>, the Court of Special Appeals "did not even address the intentional deprivation element of the theft statute." <u>Coleman v. State</u>, 423 Md. 666, 678, 33 A.3d 468, 475 (2011) (citation omitted). Any reliance on, or citation to, <u>Fraidin</u> for the proposition that actual deprivation is required under C.L. § 7-104(b) is misplaced.

For the reasons above, the evidence is more than sufficient to support Petitioner's conviction for theft under C.L. § 7-104(b).

## II.

Petitioner contends that the evidence is insufficient to support a conviction for theft of property valued in excess $100,000. Petitioner argues that the State bears the burden of proving the value of the property stolen, and asserts that the evidence adduced was vague concerning financial loss. Petitioner asserts that, at most, the State proved a financial loss of between $21,000 to $24,500, not $100,000. Petitioner maintains that the proper valuation method to be used is the value of the occupancy of the property, not the total market value of the property.

The State responds that the evidence was sufficient to support a conviction of theft over $100,000. The State contends that the evidence at trial demonstrated that the house was sold for $650,000, and that, given the value of the house, Petitioner was properly convicted of theft over $100,000. Alternatively, the State contends that, even if the value of the property stolen was under $100,000, *i.e.*, that the amount of the theft was the value of the rental of the property, the appropriate remedy is to enter a judgment of conviction for theft of property having a value over $10,000 and less than $100,000, and to remand

for resentencing. We agree with Petitioner that the evidence was insufficient to support a conviction for theft of property in excess of $100,000, and explain.

The general theft statute sets forth penalties dependent on the value of the property or services stolen. C.L. § 7-104(g). C.L. § 7-103 provides, in relevant part:

(a) *"Value" defined.* – In this section, "value" means:

(1) the market value of the property or service at the time and place of the crime; or

(2) if the market value cannot satisfactorily be ascertained, the cost of the replacement of the property or service within a reasonable time after the crime.

(b) *In general.* – The value of property or service under this part shall be determined in accordance with this section.

The Court of Special Appeals has stated that "[w]hether a theft is a felony or a misdemeanor depends on the value of the property *that was the subject of the theft*." Lane v. State, 60 Md. App. at 425, 483 A.2d at 376 (emphasis in original) (citation omitted). The State bears the burden of proving that the property stolen has value and, if seeking an enhanced penalty, the value of the property stolen. See Mercer v. State, 237 Md. 479, 484-85, 206 A.2d 797, 801 (1965) ("[T]he State has the burden of showing that the article taken had a value of $100 or more."); Jackson v. State, 10 Md. App. 337, 348, 270 A.2d 322, 327-28 (1970), cert. denied, 260 Md. 721 (1971) ("Of course, the State must prove the value of the goods received to establish the punishment authorized[.]").

As to convictions for lesser included offenses, in Brooks v. State, 314 Md. 585, 586, 552 A.2d 872, 873 (1989), a robbery case, we held that the evidence was insufficient to establish robbery with a deadly or a dangerous weapon within the meaning of a

criminal statute. Nonetheless, although reversing the Court of Special Appeals with directions to remand the case to the trial court, we held:

> There need be no new trial, however. When the jury convicted [the defendant] of armed robbery, it necessarily convicted him of simple robbery as well. We shall further direct that the judgment in the trial court be vacated, that a verdict of guilty of robbery be entered, and that [the defendant] then be sentenced on the robbery conviction. *E.g.*, *United States v. Dickinson*, 706 F.2d 88, 92-93 (2d Cir. 1983) (when there is insufficient evidence to convict of a greater offense, appellate court may reverse conviction and enter judgment on a lesser-included offense); *Dickenson v. Israel*, 482 F. Supp. 1223, 1225-1226 (E.D. Wis. 1980), *aff'd*, 644 F.2d 308 (7th Cir. 1981) (same); *State v. Grant*, 177 Conn. 140, 147-149, 411 A.2d 917, 920-921 (1979) (same); *see Morris v. Mathews*, 475 U.S. 237, 246-247, 106 S. Ct. 1032, 1038, 89 L. Ed. 2d 187, 197 (1986) (defendant's jeopardy-barred conviction may be cured by reducing it to a conviction of a lesser-included offense which is not jeopardy-barred).

Brooks, 314 Md. at 601, 552 A.2d at 880-81 (some citations omitted). See also Smith v. State, 412 Md. 150, 166, 985 A.2d 1204, 1214 (2009) (If a conviction for a greater offense is reversed, a defendant may be convicted of a lesser included offense without a new trial, so long as the reversal is not due to inconsistent verdicts.) (Citation omitted).

Here, although the State does not contend that Petitioner stole fee simple title or ownership to 2742 Kirk Drive, or asported away the house, the State argues that the value of the property stolen–the occupancy of the home for a period of months–is equivalent to the value of the home itself. It is undisputed that the theft involved the occupancy or possession of the house without payment to the lawful owner and absent authorization or consent of the lawful owner. We agree with the thorough and well-reasoned dissenting opinion of Judge Kehoe that, under this circumstance, "the proper approach is the one set forth in *Perry*, [864 N.E.2d at 211,] namely, to determine the fair market value of the

right to possess the house during the period of [Petitioner]'s occupancy." As Judge Kehoe aptly explained, "title ownership of real property is distinct from the right to occupy."

We reject Petitioner's argument that rental value is not relevant in this case because Petitioner was not charged with stealing rental value, *i.e.*, Petitioner was charged with theft of the house. As discussed above, theft of a house, which was properly charged in the indictment, can be achieved in numerous ways, including occupying or possessing the house without authorization or consent of the lawful owner and without payment to the lawful owner. The indictment need not specify whether the value of the stolen property is to be calculated based on fair market rental value or fair market value so long as the indictment charges that the property alleged to have been stolen is a thing of a certain value.

Likewise, we reject the argument that rental value attaches only to certain types of property, such as a hotel room or a boarding house, and not to a house that is vacant and not being leased. This argument strikes us as disingenuous. Obviously, a house, like a hotel room or a boarding house, may be rented or leased, at the owner's discretion. That an owner is not in the process of offering a house or room for rent, or that there is not a demand on a particular day to rent the house or room, does not mean that the house or room is incapable of being rented or that the lawful owner could not collect rent from tenants. Stated otherwise, the absence of a tenant or an attempt to procure a tenant does not mean that occupancy of the house or room is not a thing of value.

Like Judge Kehoe, we are convinced that the appropriate measure of the value of the property stolen in this case is the fair market rental value of the house at 2742 Kirk Drive. The evidence at trial demonstrated that Brathwaite's monthly mortgage payment was approximately $6,000, and that her monthly payment to the builder was an additional $2,500 to $3,500. According to Michelle, she and Petitioner signed a lease agreeing to pay $3,500 per month to rent the home at 2742 Kirk Drive. Michelle testified that she and Petitioner moved into the home in March 2010, and vacated the home around the first of October 2010, after a period of approximately seven months. Thus, the State demonstrated a financial loss, at a minimum, of $24,500, and, at a maximum, of $66,500. As such, we agree with the Judge Kehoe that the evidence was insufficient to support Petitioner's conviction for theft of property valued in excess of $100,000.

In finding Petitioner guilty of theft of property valued in excess of $100,000, the jury, of necessity, found Petitioner guilty of theft of property of a value of at least $10,000. Although we reverse the conviction for theft of property valued in excess of $100,000, a new trial is not required. Rather, as in Brooks, 314 Md. at 601, 552 A.2d at 880-81, we direct that the judgment of the trial court as to this count be vacated, that a verdict of guilty of theft of property having a value of at least $10,000 but less than $100,000 be entered, and that on remand Petitioner then be sentenced on the conviction.[9]

---

[9]Such a result is consistent with Petitioner's position in the Petition for Writ of Certiorari: "[I]f the reversal is limited to the element of value, resentencing on the theft count is in order."

**III.**

Petitioner contends that the evidence was insufficient to support his conviction for first-degree burglary. Specifically, Petitioner asserts that he was charged with breaking and entering the property "with the intent to commit theft," and argues–as he did with the theft conviction–that he did not commit theft, and that the intent to occupy an "abandoned property" is not an intent to commit theft. Petitioner argues that the house was not a "dwelling" within the meaning of the burglary statute because Brathwaite had abandoned the house in July 2009 and Severn Bank did not yet own the property at the time of his occupancy. As a final matter, Petitioner maintains that there was no evidence of a breaking because there were no broken doors or windows and, according to Petitioner, no force or deception was utilized to gain entry into the house.

The State contends that the house was a dwelling, and that its vacancy for a period of months did not deprive the house of its status as a dwelling. The State argues that the evidence was sufficient to establish a breaking because testimony demonstrated that there was "illegitimacy" in Petitioner's use of keys and a garage door opener to enter the home.

C.L. § 6-202(a) prohibits first-degree burglary; specifically, "[a] person may not break and enter the dwelling of another with the intent to commit theft or a crime of violence." As used in the statute, the terms "break" and "dwelling" "retain[ their] judicially determined meaning[s] except to the extent that [the] meaning[s are] expressly or impliedly changed in this subtitle." C.L. § 6-201(b) and (e).

In McKenzie v. State, 407 Md. 120, 121-22, 962 A.2d 998, 999 (2008), we held that an apartment vacant between tenancies was a "dwelling" for purposes of the fourth-degree burglary statute. In so concluding, we stated:

> To be a dwelling, the place must be of human habitation, that is, a "place to sleep in[.]" A structure does not become a dwelling until someone occupies it. Once a dwelling, however, the structure does not lose its character as a dwelling simply because it is left vacant for a time. The length of the vacancy, moreover, does not, of itself, disturb the character of the place as a dwelling. "Certain it is that the dweller and his entire household may be away for months, without depriving the house of its character as his dwelling."

Id. at 127, 962 A.2d at 1002 (citations omitted). We observed:

> To be sure, burglary does not require that the dwelling be occupied by its residents at the time of the breaking; however, the law distinguishes a temporarily unoccupied dwelling house from a building [that], although at times used as a dwelling, has at the time of the breaking *been abandoned by its occupants*. The former is a proper subject of burglary; the latter is not.

Id. at 133, 962 A.2d at 1005 (emphasis in original) (internal quotation marks omitted) (quoting Wallace v. State, 63 Md. App. 399, 407, 492 A.2d 970, 975, cert. denied, 304 Md. 301, 498 A.2d 1186 (1985)). And, in McKenzie, id. at 133, 962 A.2d at 1007, we stated: "To the extent that any of the case law developed in the Court of Special Appeals intimates to the contrary, [*i.e.*, that a unit between rentals is not a "dwelling,"] it is hereby overruled to that extent."

In Jones v. State, 395 Md. 97, 101, 118-19, 909 A.2d 650, 652, 662 (2006), upon finding evidence insufficient to establish a breaking, we stated that "[a] breaking occurs where there has been either an actual breaking or a constructive breaking." (Citations omitted). "Actual breaking" occurs by "unloosing, removing or displacing any covering

- 30 -

or fastening of the premises." Id. at 119, 909 A.2d at 663 (citation and internal quotation marks omitted). "Constructive breaking," on the other hand, "involves entry gained by artifice, fraud, conspiracy or threat." Id. at 119, 909 A.2d at 663 (citation omitted).

To begin, we dispose of Petitioner's argument that, because he did not commit theft, or have the intent to do so, there was insufficient evidence to support the burglary conviction. Petitioner's contention is without merit. As set forth in detail above, the evidence was sufficient for the jury to have concluded that Petitioner committed theft, and, as a corollary, that he broke and entered the property "with the intent to commit theft." The first-degree burglary statute does not require the completion of the crime of theft, but rather only "the intent to commit theft." C.L. § 6-202(a). It would be nonsensical to conclude that the evidence was sufficient to support the theft conviction, but not sufficient to support a burglary conviction, where an element of first-degree burglary is the intent to commit a theft.[10]

As to whether the home at 2742 Kirk Drive was a "dwelling" for purposes of the burglary statute, our holding in McKenzie is instructive. In McKenzie, 407 Md. at 127, 962 A.2d at 1002, we recognized that a dwelling is a place to sleep in, and that once a structure becomes a dwelling, by virtue of someone having occupied it, it "does not lose its character as a dwelling simply because it is left vacant for a time." (Citations

---

[10]On brief, the State asserts that Petitioner's argument that he did not commit a theft, and therefore did not commit a burglary, is not preserved for appellate review as the argument was not raised in the motion for judgment of acquittal, in the Court of Special Appeals, or in the Petition for Writ of Certiorari. We need not address the matter of preservation, however, as the sufficiency of the evidence as to the theft conviction has already been determined by this Court, and Petitioner's argument lacks merit on its face.

omitted). Indeed, a dweller may leave his or her home for months, "without depriving the house of its character as his [or her] dwelling." Id. at 127, 962 A.2d at 1002 (citation omitted). There exists a distinction for purposes of burglary between a temporarily unoccupied dwelling and a dwelling that has been completely "abandoned by its occupants." Id. at 133, 962 A.2d at 1005 (citation omitted). As such, in McKenzie, id. at 135, 962 A.2d at 1007, we held that an unoccupied apartment between rentals, but suitable for occupancy, was a dwelling for purposes of fourth-degree burglary.

Likewise, in this case, the unoccupied home at 2742 Kirk Drive, vacant, but suitable for occupancy–and, indeed, occupied by Petitioner and his family for seven months–was a dwelling for purposes of first-degree burglary. Clearly, the home was a dwelling in June 2007, when Brathwaite first moved into the newly built structure and slept in the home nightly. Brathwaite continuously resided in the home for the next two years until July 2009, when she moved out. Although Brathwaite moved out of the home, there was no testimony suggesting that she intended the home to remain forever vacant or unoccupied by others. Indeed, Brathwaite had initially attempted to sell the home on the open market. Brathwaite left the home intact with the windows and doors locked and intended to sell the house as a dwelling. Colander, general counsel and vice president of Severn Bank, testified that she worked on behalf of the bank to take possession of the property for the bank so that it could be sold to an individual who would occupy it. And, as the Court of Special Appeals noted, "[b]etween the time of her departure and the time the property was purchased by the bank, Brathwaite could have legally returned to the home at any time." Petitioner moved into the property in March

- 32 -

2010, only eight months after Brathwaite moved out, and found the home intact and suitable for occupancy. The dwelling did not lose its character as a dwelling, under these circumstances, simply because it was unoccupied for an eight-month period.

We reject Petitioner's contention that there was no evidence of a "breaking" because he used keys and a garage door opener to access the home, and did not break any windows or doors, or use force to gain entry. An "actual breaking" can occur by "turning a key or knob[.]" Jones, 395 Md. at 119, 909 A.2d at 663 (citation omitted). There was sufficient evidence for a determination beyond a reasonable doubt that Petitioner obtained the keys and garage door opener, which he used to access the home, without authorization from Brathwaite. Brathwaite testified that she did not know Petitioner or anybody named Derrick Williams. Brathwaite testified that she did not rent the property to anyone, and she did not make or authorize her signature on Petitioner's lease. This testimony supports the conclusion beyond a reasonable doubt that Petitioner obtained the keys and garage door opener without Brathwaite's authorization. Taken in the light most favorable to the State, the evidence presented at trial was sufficient to establish a "breaking" and to support a conviction for first-degree burglary.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, IN PART, AND AFFIRMED, IN PART, AS STATED IN THE OPINION. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO: VACATE THE JUDGMENT OF CONVICTION FOR THEFT OF PROPERTY VALUED IN EXCESS OF $100,000; ENTER A JUDGMENT OF CONVICTION FOR THEFT OF PROPERTY HAVING A VALUE OF AT LEAST $10,000 BUT LESS THAN $100,000;**

**AND REMAND THE CASE TO THE CIRCUIT COURT FOR CHARLES COUNTY FOR RESENTENCING FOR THE CONVICTION OF THEFT OF PROPERTY HAVING A VALUE OF AT LEAST $10,000 BUT LESS THAN $100,000. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID 2/3 BY PETITIONER AND 1/3 BY CHARLES COUNTY.**